**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| TIFFANY BROMIRSKI, on behalf of herself and others similarly situated, | * * * | |
| Plaintiff, | * * | |
| v. | * * | 1:13-CV-03379-ELR |
| INTERNATIONAL FOLLIES, INC. d/b/a The Cheetah, et al., | * * * | |
| Defendants. | * | |

_____

# O R D E R
_____

This matter is before the Court on multiple motions. First, as discussed below, the Court *sua sponte* dismisses Defendant William Hagood from this action without prejudice. Defendant International Follies Inc. d/b/a The Cheetah ("Defendant" or "International Follies") filed a "Motion for an Order (1) Compelling Arbitration on an Individual Basis, (2) Striking Class Allegations, and (3) Staying or Dismissing Action" ("Motion to Compel Arbitration," Doc. No. 12). In this motion, Defendant seeks to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*. Defendant contends that Plaintiff Bromirski and all other opt-in Plaintiffs (collectively, "Plaintiffs") are bound by a

mandatory Arbitration Policy covering the claims at issue in this suit. For the reasons below, the Court agrees and **GRANTS** Defendant's motion.

Also before this Court is Plaintiffs' Motion to Hold Defendant's Motion to Compel Arbitration in Abeyance Pending Limited Discovery ("Motion to Hold") (Doc. No. 16). As discussed below, the Court will treat this as a response to Defendant's Motion to Compel Arbitration. To the extent this document seeks separate relief, it is **DENIED**. In light of these orders, Plaintiffs' Motion For Conditional Certification (Doc. No. 22) and Defendant's Motion to Stay All Proceedings (Doc. No. 25) are **DENIED** as **MOOT**.

## I. Background

On October 11, 2013, Plaintiff Tiffany Bromirski filed an action alleging that Defendants International Follies and William Hagood violated the Fair Labor Standards Act ("FLSA") (Doc. No. 1). Since the filing of the Complaint – but before the parties fully briefed the Motion to Compel Arbitration – six other plaintiffs opted-in:  Jessica Cuesta (Doc. No. 6), Nia Seymour (Doc. No. 7), Armika Jolly (Doc. No. 8), Britani Cassell (Doc. No. 9), Katherine Nellums (Doc. No. 10), and Carina Van Hook (Doc. No. 11). Seven other individuals have opted-in since January 2014 (Doc. Nos. 20-21, 27-30, 36). Plaintiffs all were (or still are) entertainers/dancers at Defendants' club, the Cheetah.

Defendant International Follies offered evidence to this Court establishing that the Cheetah implemented an Arbitration Policy in October 2011 (Doc. No. 12-

2, Declaration of Holly Wood ("Wood Decl.") ¶ 3; Doc. No. 12-3, Declaration of Samantha Kim ("Kim Decl.") ¶ 3; Doc. No. 12-4, Declaration of John Braglia ("Braglia Decl.") ¶ 3). The Arbitration Policy requests all entertainers to agree to arbitrate covered claims against International Follies. (Id.) Starting in and around October 2011, various managers held a series of meetings with the Cheetah's entertainers and provided copies of a "Contract Entertainer Policies" and an "Arbitration Policy" (Wood Decl. ¶ 4, Ex. A; Kim Decl. ¶ 4, Ex. A; Braglia Decl. ¶ 4, Ex. A). The managers asked the entertainers to review the policies and to let them know if they had questions; once the entertainers reviewed the policy, the managers asked the entertainers to sign an "Acknowledgement of Receipt" as acknowledgement that they received both policies. (Id.) The managers then also signed the Acknowledgement of Receipt. (Id.)

For the Plaintiffs who had opted into this lawsuit before the Motion to Compel Arbitration was filed, the affidavit testimony reflects the day each Plaintiff received the Arbitration Policy (Wood Decl. ¶ 5 (Bromirski); Wood Decl. ¶ 6 (Seymour); Wood Decl. ¶ 7 (Van Hook); Kim Decl. ¶ 5 (Nellums); Kim Decl. ¶ 6 (Cassell); Kim Decl. ¶ 7 (Jolly); Braglia Decl. ¶ 5 (Cuesta)). Each entertainer signed and dated an Acknowledgement of Receipt. (Id.) Although the Acknowledgment of Receipt only references the Contract Entertainer Policies, sworn affidavit testimony shows the Arbitration Policy was provided to the

Plaintiffs at the same time as the other document. (Id.)   The Plaintiffs continued to perform at the Cheetah following this meeting.  (Id.)

## II. Procedural History

### a. William Hagood Must be Dismissed from this Action.

As a preliminary matter, William Hagood is dismissed from this action without prejudice.  On April 8, 2014, this Court gave Plaintiffs notice that service had not been executed as to Defendant Hagood (Doc. No. 26).  The Court noted all defendants were to be served by February 10, 2014 pursuant to Fed. R. Civ. P. 4(m).  The Court ordered that Plaintiffs shall submit evidence to the Court by May 8, 2014 indicating that service had been perfected.  Plaintiffs failed to comply.  Defendant Hagood, therefore, is dismissed without prejudice.

### b. Motions and Briefing Regarding Defendant's Motion to Compel

On November 13, 2013, Defendant International Follies filed its Motion to Compel Arbitration (Doc. No. 12).  Plaintiffs did not respond to this motion; instead, on November 24, 2013, Plaintiffs filed their Motion to Hold (Doc. No. 16). Defendants filed a response to Plaintiffs' motion on December 5, 2013 (Defendants' Response, Doc. No. 17).  Plaintiffs then filed a reply on December 6, 2013 (Plaintiffs' Reply, Doc. No. 18).

Importantly, the December 6, 2013 Plaintiffs' Reply and attached affidavit will not be considered by the Court.  The Court notes that Plaintiffs did not respond to Defendant's Motion to Compel Arbitration (Doc. No. 12); instead,

4

Plaintiffs' subsequent document is framed as an independent motion, not a response. Under Local Rule 7, if the deadline for a response to a motion passes without a response being filed, the motion is deemed unopposed. See Local Rule 7.1B. The Court could, therefore, deem Defendant's Motion to Compel Arbitration unopposed.

The Court will, however, construe Plaintiffs' Motion to Hold as a response to Defendant's Motion to Compel Arbitration, and Plaintiffs' arguments contained in the brief will be discussed *infra*. Accordingly, Plaintiffs' December 6, 2013 Reply constitutes an impermissible surreply. A surreply requires leave of Court to file. Lemond v. Capital One Bank (USA), N.A., No. 1:09-CV-01582-JOF, 2010 WL 761235, at *2 (N.D. Ga. Mar. 2, 2010) ("The court can, in its discretion, allow a party to file a surreply."). "Although the Court may in its discretion permit the filing of a surreply, this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists." Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005). At no point did Plaintiffs provide a valid reason for filing the surreply. Accordingly, the Court excludes it from consideration.

Additionally, the Court notes that even if it were to consider the Plaintiffs' Motion to Hold as a separate motion – such that Plaintiffs' reply brief would be timely and appropriate – the Court still would not consider the affidavit included in Plaintiffs' Reply. "The court considers reply affidavits only for the 'limited

5

purpose of responding to matters raised in the responses filed by the opposing parties.'" Exceptional Mktg. Grp., Inc. v. Jones, 749 F. Supp. 2d 1352, 1359 (N.D. Ga. 2010) (quoting Tishcon Corp. v. Soundview Commc'ns, Inc., No 04-CV-00524, 2005 WL 6038743, at *8 (N.D. Ga. Feb. 15, 2005)). Several cases in the Northern District of Georgia support the proposition that a reply declaration or affidavit should be excluded when they are not limited to addressing arguments in the response. See id.; Tishcon Corp., 2005 WL 6038743, at *8-9 (refusing to consider the plaintiff's reply declaration); Lewis v. Zilog, Inc., 908 F. Supp. 931, 959 (N.D. Ga. 1995) (finding that affidavits filed with reply brief were untimely filed).

Plaintiffs' Reply included an affidavit from Plaintiff Bromirski introducing new evidence that does not respond to *new* arguments raised by the Defendants' Response. Plaintiffs' Reply affidavit is a blatant attempt to supplement the deficient Motion to Hold, which did not include *any* evidentiary support. The Motion to Hold never concretely states Plaintiffs did not receive the Arbitration Policy; instead, the arguments are limited to Plaintiffs' denial "that the materials submitted by the Defendants provide any support whatsoever for the contention that the [Plaintiffs] were provided copies of the 'Arbitration Policy'" (Doc. No. 16 at 4). Plaintiffs' Reply, for the first time, asserts that Plaintiff Bromirski never saw the Arbitration Policy and therefore cannot be bound to it. Plaintiffs did not raise this argument or offer this affidavit in its Motion to Hold; it was at this stage this

evidence would have been timely. Plaintiffs' attempt to supplement their insufficient original motion will not be allowed.

### c. **Plaintiffs' Motion to Hold Defendant's Motion to Compel Arbitration in Abeyance Pending Limited Discovery is Denied.**

In their Motion to Hold, Plaintiffs seek limited discovery as to the existence and enforceability of the Arbitration Policy. The requested discovery, however, is not needed because the Court can determine that the Arbitration Policy is in effect without ordering discovery. Contrary to Plaintiffs' argument that Defendant has not met its burden to prove the existence of an agreement to arbitrate, the Court finds International Follies provides clear, direct evidence that the parties entered into the Arbitration Policy. Additionally, even without the discovery Plaintiffs seek, Plaintiffs could have provided some evidence that the Arbitration Policy was not provided to Plaintiffs; they did not, however, present timely, admissible evidence. Accordingly, the Court cannot identify a reason to order expensive, time-consuming discovery on this issue. Plaintiffs' Motion (Doc. No. 16) is **DENIED**.

### III. **Legal Standard**

"The validity of an arbitration agreement is generally governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005). The FAA provides as follows:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the

>refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

"The liberal federal policy favoring arbitration agreements . . . is at bottom a policy guaranteeing the enforcement of private contractual arrangements." Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 625 (1985) (internal quotations and citations omitted). Under the FAA, "parties cannot be forced to submit to arbitration if they have not agreed to do so." Chastain v. Robinson–Humphrey Co., 957 F.2d 851, 854 (11th Cir. 1992). "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." Id. (quoting Mitsubishi, 473 U.S. at 626). Importantly, state law governs whether an enforceable agreement to arbitrate exists. Caley, 428 F.3d at 1368.

"Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration." Chastain, 957 F.2d at 854. "Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract *in general*." Id. When a party seeking to avoid arbitration has not signed the agreement, as is alleged in this case, the "calculus changes:"

8

> In such a case, that party is challenging the very existence of *any* agreement, *including the existence of an agreement to arbitrate.* Under these circumstances, there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the Act. If a party has not signed an agreement containing arbitration language, such a party may not have agreed to submit grievances to arbitration at all. Therefore, before sending any such grievances to arbitration, *the district court itself* must first decide whether or not the non-signing party can nonetheless be bound by the contractual language.

Id. Once a party seeking arbitration has put forward evidence the parties entered into an arbitration agreement, a party challenging the existence of an agreement and seeking to avoid arbitration must (1) unequivocally deny that an agreement has been made and (2) provide some evidence to substantiate the denial. Id.

This showing will put "the making of the arbitration agreement . . . in issue" under 9 U.S.C. § 4, and thereby entitle the party opposing arbitration to a trial on the existence of the arbitration agreement. A "genuine dispute" as to contract formation "precludes a court from deciding as a matter of law that the parties did or did not" agree to arbitrate. Regan v. Stored Value Cards, Inc., No. 1:14-CV-01187-AT, 2015 WL 570524, at *1 (N.D. Ga. Jan. 13, 2015).

When the Court determines a dispute is subject to arbitration, the Court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.  The Court may dismiss or stay a case when all of the claims must be submitted to arbitration. See 9 U.S.C. § 3; Jackson v. Cintas Corp., 425 F.3d 1313, 1318 (11th Cir. 2005).

9

## IV. Analysis

### a. The Arbitration Policy is Subject to the FAA.

After review of the Arbitration Policy, the Court finds the Arbitration Policy is subject to the FAA as it meets the requirements of 9 U.S.C. § 2. First, it is clearly a written provision. Second, it is a contract evidencing an agreement to arbitrate a transaction involving commerce. See Caley, 428 F.3d at 1367 ("The United States Supreme Court has clarified that the FAA generally applies to contracts of employment except those involving 'transportation workers.'") (quoting Circuit City v. Adams, 532 U.S. 105, 119 (2001)). Additionally, "[c]ourts have consistently found that claims arising under federal statutes may be the subject of arbitration agreements and are enforceable under the FAA."[1] Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1313 (11th Cir. 2002); see also Caley, 428 F.3d at 1379 (affirming district court's order compelling arbitration of FLSA claims).

---

[1] The Court notes that the arbitration of claims arising under a federal statute, like the FLSA, must provide the litigants a forum to effectively vindicate their statutory rights. Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 90 (2000). Here, the Arbitration Policy does not alter any Plaintiff's ability to assert and vindicate her statutory rights under the FLSA; it simply changes – by the agreement of the parties—where Plaintiffs may assert those rights. See Caley, 428 F.3d at 1371.

### b. The Arbitration Policy is Enforceable Under State Contract Law Principles.

The primary dispute between the parties is whether they entered into a binding agreement regarding the Arbitration Policy.  As discussed below, the Court finds the evidence shows the parties entered into a binding and enforceable Arbitration Policy under state contract law, so the Arbitration Policy governs this dispute.

Under Georgia law, "[a] definite offer and complete acceptance, for consideration, create a binding contract."  Moreno v. Strickland, 255 Ga. App. 850, 852, 567 S.E.2d 90, 92 (2002).  Here, the Arbitration Policy clearly establishes an offer, stating as follows:  "THE MUTUAL OBLIGATIONS SET FORTH IN THIS AGREEMENT SHALL CONSTITUTE A CONTRACT BETWEEN YOU AND INTERNATIONAL FOLLIES . . ." (Policy ¶ 17).  Plaintiffs were offered the mutual promises of the Arbitration Policy.  Additionally, these mutual promises and obligations in the Arbitration Policy are sufficient consideration under Georgia law.  See Atlanta Six Flags P'ship v. Hughes, 191 Ga. App. 404, 407, 381 S.E.2d 605, 607 (1989).

Finally, Plaintiffs accepted the offer by acknowledging receipt of the Arbitration Policy and/or continuing to perform at the Cheetah.  See Moreno, 255 Ga. App. at 853 ("An offer may be accepted . . . either by a promise to do the thing contemplated . . . , or by the actual doing of the thing.") (internal quotations

omitted).  A Plaintiff's signature on the Receipt of Acknowledgment constituted acceptance of the terms of the Arbitration Policy.  Even if the signature is discounted, Plaintiffs continued employment is also deemed acceptance of the Arbitration Policy.  The Arbitration Policy explains continued employment will constitute acceptance of the contract (Policy ¶ 17), and Defendant's evidence shows each dancer continued to dance at the Cheetah after being provided the Arbitration Policy.  The Court is satisfied there was a definite offer and complete acceptance for consideration, thus creating a binding contract.

Plaintiffs' Response does not assert that Plaintiffs did not receive the Arbitration Policy, and it does not present evidence whatsoever to contradict the sworn testimony of International Follies' witnesses.  Instead, Plaintiffs argue the Defendant's evidence does "not remotely suffice to meet its burden to prove the existence of an *agreement to arbitrate"* (Doc. No. 16 at 2).  In support, Plaintiffs argue that the signed Acknowledgement of Receipt only refers to the Contract Entertainer Policies, and not the Arbitration Policy. Additionally, Plaintiffs note that Defendants presented the documents in the following order:  (1) the Contract Entertainer Policies, numbered pages one through four; (2) the Arbitration Policy, numbered pages one to three, and (3) the Acknowledgment of Receipt, numbered page five.  Plaintiffs argue the page numbers "strongly suggest[] that each 'acknowledgment' is in fact page 5 of the '*Contract Entertainer Policies*'" (Id. at

3). Plaintiffs' conclusion, therefore, is that Plaintiffs did not acknowledge the Arbitration Policy and thus should not be bound by it.

Plaintiffs' argument fails for several reasons. First, after Defendants put forward evidence of the Arbitration Policy, Plaintiffs, as the party challenging the existence of an agreement, must unequivocally deny that an agreement has been made. See Chastain, 957 F.2d at 854. Plaintiffs fail to make this assertion and instead request the Court to infer Plaintiffs did not receive the Arbitration Policy. Second, Plaintiffs must provide some evidence to substantiate the denial. Id. Again, Plaintiffs offer no evidence in their response.

Plaintiffs fail to acknowledge that the affidavits of International Follies' employees clearly state each Plaintiff received a copy of the Contractor Entertainer Policies *and* the Arbitration Policy. This is sufficient evidence to show the Plaintiffs were provided a copy of the Arbitration Policy.

Additionally, Plaintiffs did not need to sign the Arbitration Policy in order to be bound by it. It is inconsequential that the signed Acknowledgement of Receipt form does not reference the Arbitration Policy. The FAA requires the arbitration agreement be in writing, but "it does not require that it be signed by the parties." Caley, 428 F.3d at 1368-69 (enforcing arbitration agreement when "the employees' acceptance was by continuing their employment and was not in writing" because "all material terms—including the manner of acceptance—were set forth in the written [policy]"). Here, the Arbitration Policy specifically

provides, in bold, capital letters: "CONTINUATION BY YOU AS AN ENTERTAINER SHALL BE DEEMED TO BE ACCEPTANCE OF THIS ARBITRATION POLICY. NO SIGNATURE SHALL BE REQUIRED FOR THE POLICY TO BE APPLICABLE" (Policy ¶ 17). Defendant's affidavit testimony shows Plaintiffs received the Arbitration Policy and then continued to work at the Cheetah. Even if the signatures are discounted, this constituted Plaintiffs' acceptance of the Arbitration Policy.

Finally, not only did the parties agree to arbitrate certain disputes, they agreed to arbitrate the FLSA claims asserted in this action. The Arbitration Policy expressly covers all claims at issue here. The Arbitration Policy states all "covered claims" shall be submitted to arbitration under the FAA, including claims under the FLSA; Policy ¶ 2 states as follows: "Covered claims include, but are not limited to, claims that arose prior to or after the effective date of this policy, regardless of when the claim occurred or accrued, including claims arising under . . . the Fair Labor Standards Act (FLSA), 42 U.S.C. § 1981." The Court finds the Arbitration Policy clearly encompasses the underlying dispute, and it is binding on the parties.

### V. **Plaintiffs Cannot Arbitrate on a Collective Basis.**

Plaintiffs may not pursue their claims in arbitration as a class action because the parties did not consent to class arbitration. "[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." Stolt-Nielsen S.A. v. AnimalFeeds

Int'l Corp., 559 U.S. 662, 684 (2010). The Arbitration Policy does not establish the parties contracted to submit to class arbitration; in fact, the explicit wording of the Arbitration Policy forbids class arbitration and contains a class waiver provision: "[T]he arbitrator has no authority to and shall not consolidate claims of different employees into one proceeding, nor shall the arbitrator have the power to hear an arbitration as a class or collective action . . ." (Policy ¶ 3). The Plaintiffs, therefore, cannot arbitrate their claims on a collective basis.

## VI. Conclusion

Defendant William Hagood is **DISMISSED** from this action **WITHOUT PREJUDICE**. Defendant's Motion to Compel Arbitration (Doc. No. 12) is **GRANTED**. It is **ORDERED** that Plaintiffs must arbitrate their claims on an individual basis. Defendant's request for an order staying this action is **GRANTED**. Plaintiffs' Motion to Hold Defendant's Motion to Compel Arbitration in Abeyance (Doc. No. 16) is **DENIED**. Plaintiffs' Motion for Conditional Certification (Doc. No. 22) and Defendant's Motion to Stay All Proceedings (Doc. No. 25) are **DENIED** as **MOOT**. The Clerk is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this action with the right of either party to reopen after the arbitrator renders a final decision.

**SO ORDERED**, this 12th day of May, 2015.

_____
ELEANOR L. ROSS
UNITED STATES DISTRICT JUDGE

15